## LARSEN v. RICHARDS, et ux.

No. 2477.   Decided July 8, 1913 (134 Pac. 583).

ATTACHMENT—DISCHARGE—DEPOSIT IN LIEU OF ATTACHED PROPERTY—
    RELEASE. Where property alleged to belong to defendant was
    released from attachment on a claimant depositing a sum of
    money to secure plaintiff's recovery, if any, and the property
    was thereupon returned to the claimant, the court in which the

attachment was pending had no jurisdiction, on motion, to enter an order discharging the same or releasing the deposit on affidavits of the claimant that the property attached and the deposit made in lieu thereof belonged to him and not to the attachment defendant.

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by A. C. Larsen against S. W. Richards and wife. From an order directing the re-payment of a deposit made to discharge an attachment, plaintiff appeals.

REVERSED AND REMANDED, WITH DIRECTIONS.

*G. W. Moyer* for appellant.

*Smith & McBroom* for respondents.

FRICK, J.

This action was commenced in the district court of Davis County to recover upon an implied contract for board and lodging. When the action was commenced the plaintiff, pursuant to Comp. Laws 1907, section 3064, also made and filed his affidavit, in which he alleged the necessary facts for which a writ of attachment may be issued, and such writ was accordingly issued. However, when the writ was about to be served by the sheriff of Davis County by levying upon and taking into his possession two horses which the plaintiff claimed were owned by the defendant S. W. Richards, one Herbert Tullett, in whose possession the horses then were, made some claim to them. Tullett, upon condition that the horses should be released from the attachment, agreed to deposit with the clerk of the court of Davis County, for the sheriff of said county, the sum of $500, the same being in excess of plaintiff's claim; said money to be held for the benefit of the plaintiff in the action until the action was finally determined. The clerk issued the following receipt for the money:

"Received of H. Tullett $500 to be delivered to Fred Harris (the sheriff) of Davis County." The foregoing receipt was presented to the sheriff, who indorsed thereon the following:

"I hereby have received the order for the release of the horses on a bond of $500 in case of A. C. Larsen v. S. W. Richards and Wife. Dated October 14, 1912." The horses were then left in Tullett's possession, and the $500 was received by the sheriff in lieu of what is sometimes called "bail," or security for the judgment, if any is obtained in the action by the plaintiff against the defendant therein. By an examination of the answer which was subsequently filed the purpose for which the deposit was made is clearly seen. In that pleading after admitting that the defendants became indebted to the plaintiff for "lodging," it is averred that said defendants, for the purpose of securing said indebtedness, "pledged and deposited with the said plaintiff" a certain jewel of the value of $135, which, it is averred, plaintiff agreed to hold "as collateral security for the payment of said indebtedness." It is then further averred that plaintiff had not accounted for said jewel and demand is made that he be required to do so. Defendants then proceed to aver that notwithstanding plaintiff had received and retained said jewel for the purposes aforesaid, he, nevertheless, commenced this action, and caused a writ of attachment to issue therein, and "pursuant to the writ of attachment" threatened to "take possession of certain property then in the possession of the defendant S. W. Richards; that the said defendant S. W. Richards, being compelled to do so, by reason of the threatened levy of an attachment upon his said property, caused to be deposited with the sheriff of Davis County, state of Utah, on the 14th day of October, 1912, the sum of $500 lawful money of the United States, to be held by the said sheriff, subject to the order of this court, and to be applied in discharge of any judgment which might be rendered in favor of the plaintiff herein, and against the said defendants."

The other portions of the answer are not material, and the part we have set forth is material only as showing the purpose for which the $500 was delivered and received, and that both parties clearly understood such purpose. The two horses upon which the attachment was levied, or about to be levied, were accordingly left with Mr. Tullett, and he and the defendant Richards could do with them as they thought best, which they did by taking them out of the state. Notwithstanding the fact that the $500 deposit was to await the final determination of the action, some time after the defendants had answered, Mr. Tullett sought to intervene therein by filing a motion, supported by affidavits, in which he asked that the money deposited as aforesaid be returned to him. It is not necessary to set forth the statements contained in the affidavits, or the grounds of the motion, further than to state that they were based upon the fact that both the horses and the money belonged to Tullett, and that the money was deposited by him to prevent the sheriff from taking and holding the horses, etc. Upon the hearing of the motion the district court entered judgment directing the money to be returned to Tullett, from which judgment this appeal is prosecuted.

It will thus be seen that by depositing the $500 the defendant obtained, or retained, the possession, use, and control of the horses, which they alleged were very valuable, and further that the use thereof was also valuable to them on account of the horses being race horses, and by the judgment aforesaid were also given back the money. The plaintiff is thus left with nothing except the naked right to prosecute his suit to final judgment against alleged nonresident defendants who may have no property or means within this state from which a judgment, if one is obtained, can be satisfied. The principal purpose of statutes authorizing the attachment of property of nonresidents before judgment, and the giving of so-called bail bonds, is to secure payment of any judgment the plaintiff may ultimately recover on the one hand, and, upon the other, to permit the nonresidents to release their property from the attachment by giving the

statutory bond, or by making a deposit of money for the purpose of securing the judgment, if any be obtained in the action, and the defendants may thus have the full use and control of their property notwithstanding the attachment. Moreover, when such a bond or security is given and the property is released from the attachment, there is no longer any attachment, and the court has thereafter no power to entertain a motion to discharge the attachment, or to release or discharge the bond that was given to secure the judgment, In 1 Shinn on Attachment and Garnishment, section 304, the author, in discussing the subject, states the law thus:

"When, for the purpose of releasing attached property (or to prevent property from being attached) a bond is given to pay the judgment which the attachment plaintiff may thereafter procure against the attachment defendant, the principal effect of such bonds is to dissolve the attachment (if levied) and discharge the property from the attachment lien, and the case will then proceed as if originally begun by summons. . . . The attachment has expended its force and is no longer operative. The bond dissolves the attachment entirely. It is not given for the property itself, but for the payment absolutely of the judgment when recovered in the suit, whatever may be the amount, if within the penalty named in the bond. It is a security for any judgment which would have been satisfied out of the attached property. . . . In fact it has been said that a bond given to a plaintiff to pay the judgment that might be recovered by him operates, not only to release the levy, but to destroy the writ itself, and that thereafter a motion to dissolve the attachment as being irregularly or improvidently issued will not be entertained. There is no levy to be quashed after the bond is given and the property released."

Pursuant to the doctrine contained in the foregoing, statement, the appellate courts have frequently held that where property is released from an attachment and is, upon giving security by the defendant, returned to him, the court before whom the action in which the writ of attachment was issued is pending may not, upon a mere motion, enter an order or judgment discharging the attachment or releasing the bond given as aforesaid, and in case such an order or judgment is entered the same is clearly erroneous, if not absolutely void. In the following cases the doctrine is illustrated and applied: *Wyman v. Hallock,* 4 S. D. 469, 57 N.

W. 197; *McCombs v. Allen,* 82 N. Y. 114; *Gardner v Don-
nelly,* 86 Cal. 367, 24 Pac. 1072; *Billingsley v. Harris,* 79
Wis. 103, 48 N. W. 108. See, also, 1 Wade on Attachment,
section 183, and Waples on Attachment, sections 762-768,
where the doctrine is discussed. ·

The judgment in the case at bar falls clearly within the
rule stated above. When the writ of attachment issued in
the case at bar was served by the sheriff, and the horses were
about to be taken as the defendant's horses from the posses-
sion of Tullett, he proposed the giving of security by mak-
ing the deposit aforesaid. His proposition was accepted,
and, the deposit having been made, the horses were released
by the sheriff and returned to and retained by Mr. Tullett.
As we have seen, all that was done by Mr. Tullett and the
sheriff was clearly understood and ratified by the defendants,
as appears from their answer. In view of this we cannot
see what right or authority the court had to direct the
money to be returned to Mr. Tullett before it was ascer-
tained that the plaintiff was not entitled to judgment against
the defendants. The money was to remain on deposit until
the action was finally determined. After the deposit was
made Tullet had no right to intervene in the action and claim
the return of either the money or the horses. In 1 Wade
on Attachment, section 183, in referring to the question now
under consideration, the author says:

"The requisite bond being tendered, the court no longer has
any control of the property. No third person can intervene after
the release, to avail himself of the pendency of the action to have
his claims to the property adjudicated, and, as a consequence, has
no right to resist its release and restoration to the defendant."

If a third person has any claim upon the property, he
must proceed in the usual way. In the case at bar the horses
were taken as the property of the defendant S. W. Richards,
and when they were released they were returned as his. At
all events, after the security was given, plaintiff was no
longer concerned about the real ownership of the horses, or
what became of them. After that these questions were out

of the case, and all the plaintiff was required to do, in order to be entitled to the money or a part of it, was to show that he was entitled to a judgment against the defendants, and to have such judgment properly entered. The purpose of depositing the money was to secure any judgment that might be obtained, and incidentally to avoid any trouble over the question of the ownership of the horses. Of course, if plaintiff fails to obtain a judgment against the defendants, or either of them, for any reason, then the money must be returned.

By what we have said we do not wish to be understood as holding that a party may not, after giving bond, or after making a deposit, which has the same effect, obtain relief in case the bond was obtained through fraud, oppression, or actual duress. What we hold is that such relief may not be obtained in the way it was attempted to be done in this case, namely, by merely filing a motion, supported by affidavits, to have the bond or money released. If such a bond or deposit of money is obtained through fraud, oppression, or by an abuse of process, no doubt relief may be had in a proper proceeding to cancel the bond or to release the money, for the reasons aforesaid.

Respondents in their brief suggest a defect in the notice of appeal. No direct attack was made upon the notice, and we think it is sufficient. The clause incorporated into the notice of appeal that the appeal was also taken "on all questions of fact" may be treated as surplusage. If that clause be stricken out of the notice, it is still complete and sufficient.

For the reasons stated in the foregoing opinion, the judgment is reversed, and the cause remanded to the district court of Davis County with directions to set aside the judgment ordering the money returned to the intervener, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs on appeal.

McCARTY, C. J., and STRAUP, J., concur.