J. G. CORTELYOU ET AL. V. LUTHER B. MABEN ET AL.

FILED May 15, 1894. No. 5632.

1. **Review**: ASSIGNMENTS OF ERROR. An assignment in a petition in error, that "the court erred in its rulings upon the introduction of evidence offered by the plaintiffs," is not sufficient to present for review the several rulings of the trial court excluding or admitting testimony.

2. **Attachment**: BONDS: APPROVAL: SURETIES. A redelivery bond, executed for the purpose of procuring the release of attached property, is not a binding obligation upon the persons signing as sureties until the same has been accepted and approved by the officer who levied the writ. Such approval need not be indorsed upon the bond, but an approval may be implied from circumstances.

3. ———: ———: ———: ———. Where the officer receiving a forthcoming bond in attachment notifies the defendant that he

rejects the bond on account of insufficiency of the sureties thereon, and it does not appear that the attached property was ever surrendered to the defendant, the sureties are not liable in an action on such bond.

4. ——: ——: ——: ESTOPPEL. Where such a bond is not approved, but is rejected, the sureties are not estopped from asserting that their principal never received the attached property from the officer.

ERROR from the district court of Holt county. Tried below before BARTOW, J.

*H. M. Uttley,* for plaintiffs in error:

A forthcoming bond, reciting the sheriff's seizure of certain property under a writ of detinue in the case, and conditioned for the delivery of it with other property if the suit fails, estops plaintiff from showing that such property was not so seized, or that it did not go into his possession under the bond. (*Hill v. Nelms,* 5 So. Rep. [Ala.], 797; *Case v. Steele,* 8 Pac. Rep. [Kan.], 242; *Smith v. Fargo,* 57 Cal., 157; *McMillan v. Dana,* 18 Cal., 339; *Bowers v. Beck,* 2 Nev., 150; *Higdon v. Vaughn,* 58 Miss., 572; *Goebel v. Stevenson,* 35 Mich., 172; *Gray v. MacLean,* 17 Ill., 404; *Dorr v. Clark,* 7 Mich., 310; *Easton v. Goodwin,* 22 Minn., 426; *Fowler v. Scott,* 11 Ark., 675; *Oelrichs v. Spain,* 15 Wall. [U. S.], 211; *Towle v. Towle,* 46 N. H., 431; *Heard v. Lodge,* 20 Pick. [Mass.], 53; *Rapelye v. Prince,* 4 Hill [N. Y.], 123; *Dowling v. Polack,* 18 Cal., 626; *Warner v. Matthews,* 18 Ill., 86; *Ferguson v. Glidewell,* 2 S. W. Rep. [Ark.], 711; *Bowden v. Taylor,* 6 S. E. Rep. [Ga.], 277.)

*M. F. Harrington, contra.*

NORVAL, C. J.

This is an action brought by the plaintiffs in error against defendants in error upon a delivery bond, executed by the defendants for the release of certain personal prop-

37

erty, which was taken under order of attachment issued out of the county court of Hall county in two actions pending in said court, wherein Luther B. Maben was defendant, and in one of which J. G. Cortelyou, Ralph Ege, and M. N. Van Zant, parties doing business under the name of the Bank of Ewing, were plaintiffs, and in the other, Grace Reed, Ellis O. Jones, Freeman P. Kirkendall, and Charles A. Coe, partners under the name and style of Reed, Jones & Co., were plaintiffs. The petition filed in the court below alleges the issuance of the writs of attachment, and that the same were levied by one Marshall L. Swain, a constable, upon the goods and property of the defendant in the original actions, Luther B. Maben; that for the purpose of procuring a release of the attached property the defendants executed and delivered to the constable the bond, which is the foundation of this suit; that the bond was approved by the officers, and the property held by him under said attachments was surrendered to the defendant Maben, and the same has ever since remained in his possession or under his control. The petition further avers that the bond has been lost and cannot be found ; that said orders of attachment are in full force, and the same have been upheld, approved, and sustained, and a judgment in favor of the plaintiffs has been recovered in each of said cases; that an execution has been issued upon each of said judgments for the purpose of selling the attached property in accordance with the orders of the court, and a return of the property for the purpose of sale demanded of the defendants, yet no part thereof has ever been delivered to the plaintiffs or the constable; wherefore plaintiffs ask judgment for $819.36, the value of the property. The defendants, in their answer, admit the recovery of the judgments mentioned in the petition, but deny every other averment therein contained. There was a trial by jury, and at the close of plaintiff's testimony, by direction of the court, a verdict was returned for the defendants.

Numerous objections were made, and exceptions taken, by the plaintiffs to the rulings of the court below excluding evidence offered by them, and several of the rulings are urged in the brief of counsel as grounds for reversal. The decisions of which complaint is now made cannot be considered, for the reason that the same are not sufficiently raised in the petition in error.   The only paragraph therein relating to this branch of the case is the fourth, which is in the following language:

"4. The court erred in its rulings upon the introduction of evidence offered by the plaintiffs, which were duly excepted to at the time."

This assignment does not, in the least, indicate what particular piece of testimony was improperly admitted or excluded.   The errors relied on for a reversal of a judgment must be specifically pointed out in the petition in error. It is the settled law of this state that such an assignment in a petition in error is too indefinite to present for review the rulings of the trial court on the admission of testimony. (*Lynam v. McMillan*, 8 Neb., 135; *Burlington & M. R. R. Co. v. Harris*, 8 Neb., 140; *Graham v. Hartnett*, 10 Neb., 518; *Lowe v. City of Omaha*, 33 Neb., 587; *Gregory v. Kaar*, 36 Neb., 533; *Farwell v. Cramer*, 38 Neb., 61.) Another reason why the rulings of the district court excluding testimony of plaintiffs' witnesses cannot be considered is that the excluded testimony was not preserved in the bill of exceptions. (*Commissioners of Kearney County v. Kent*, 5 Neb., 227; *Connelly v. Edgerton*, 22 Neb., 83; *Yates v. Kinney*, 25 Neb., 120; *Burns v. City of Fairmont*, 28 Neb., 866.)

We have now to consider whether the court below was right in directing a verdict for the defendants. The answer put in issue the execution and delivery of the bond and the acceptance thereof by the officer, also whether the attached property was ever surrendered by the constable to the defendant Maben.   It was established at the trial that

a redelivery bond in attachment, in the usual form, and conditioned as required by statute, was executed by all the defendants about three months after the attachments were levied, which was handed to the constable by Mr. Maben. It also appears that this bond has been either lost or destroyed, and that no formal approval thereof, or the sureties thereon, was ever indorsed upon the instrument by the officer. The contention of the defendants is that the bond was never approved by the constable, and without such approval it was not a binding obligation upon the sureties. It cannot be doubted that until a bond given for the redelivery to the defendants of the property seized under a writ of attachment has been accepted and approved, the sureties are not liable; otherwise the officer levying the writ, upon the delivery of a bond to him, would be compelled to surrender the property to the attaching defendant, even though the person or persons signing the bond as sureties were wholly insolvent. The statute requires that such a bond must be signed by "one or more sufficient sureties resident in the county." (Code, secs. 206, 930.) The officer no doubt may reject the bond on the ground that the surety thereon is irresponsible, because he does not reside in the county, or because the penalty is insufficient. We are unable to find any statute which requires the officer to indorse his approval upon the bond, and when he takes the bond and releases the property from the levy, it will be presumed that he approved the bond. An approval may be implied from circumstances. Thus in *Asch v. Wiley,* 16 Neb., 41, it was held that when an appeal bond in the proper amount, with sureties, is filed by the appellant with a county judge within the statutory time, the acceptance of such bond and the spreading it upon the docket is a sufficient approval, unless the appellant is notified of the fact that the county judge declines to approve the bond and the sureties. The case cited being so closely analogous that it may properly be considered as establishing the doctrine that the approval

of a delivery bond in attachment may be implied from cir-cumstances. A perusal of the testimony in the case not only fails to establish the approval by the constable of the bond in question, but shows the reverse to be true. Mr. Swain, the constable, testifies that Mr. Maben handed him the bond and demanded a return of the goods, which re-quest was not then complied with, the officer stating that he did not know whether the sureties were good or not, as he was not acquainted with them; that subsequently the witness served a written notice upon Mr. Maben, as well as told him, that he would not accept the bond. This testi-mony is uncontradicted, and entirely negatives an acceptance and approval of the bond. The instrument, therefore, was not operative, nor were the sureties liable thereon. It is urged that the judgment should be affirmed for the further reason the attached goods were never delivered by the consta-ble to Maben. The only evidence in the record as to what was done with the goods is found in the testimony of Mr. Swain, the officer who levied the attachments, and is as follows:

Q. You may now state what was done with those goods after they were attached.

A. They were invoiced and put into a room in the west end of the store building—west end of the main building—and nailed up there.

Q. After the goods were put into that room state what was done with them.

A. All that I know that was done with them was just nailed the room up solid. That was all that I done with them afterwards.

Q. State whether or not, after the goods were put in there and locked up, Mr. Maben done anything, or made any effort, to get possession of these goods again.

Objected to by the defendants John J. McCafferty and Grover B. Maben, as incompetent, irrelevant, immaterial, hearsay, and secondary evidence. Objection sustained, and plaintiffs except.

*        *        *        *        *        *        *

Q. Now you may state what was said by you and Mr. Maben in regard to turning over the goods to him at the time he handed you the bond.

Objected to by defendants John J. McCafferty and Grover Maben, as incompetent, immaterial, and not the best evidence, and not competent or proper testimony to bind these defendants as sureties. Overruled and defendants except.

A. I told him that I did not know whether these men were good or not. I did not know either one of them, excepting maybe—I had met Mr. McCafferty, then, and I had not seen Grover Maben at that time. I did not know them and I went and asked Mr. Cortelyou about it, and he said——

Objected to what Mr. Cortelyou said. Sustained.

\*     \*     \*     \*     \*     \*     \*

Q. Recurring to these orders that you have made here —the returns you have made—in the case of Reed, Jones & Co., and Cortelyou, Ege, and Van Zandt, state where that store building was that is described in your return.

A. It was in Deloit precinct, right in the southeast corner of the county.

Q. Who did you find in possession of these goods when you went down there?

A. Mr. Maben, you, and Butler.

Q. The goods you attached you put in the back of Maben's store and nailed them up?

A. Yes.

Q. And Mr. Maben still had a lot of goods in the front of the room?

A. Yes.

Q. That was the last you ever saw of the goods?

A. Yes.

\*     \*     \*     \*     \*     \*     \*

Q. The goods were nailed up?

A. I don't know.

Q. You told him you would not accept the bond?

A. Yes.

Q. But that you would give him the goods?

A. No, sir; I did not tell him that.

Q. You never told him that?

A. I just served the notice upon him.

Q. That Uttley sent you?

A. Yes.

Q. That you would not give him the goods on that bond?

A. No, sir; that was not it.

Q. What was it, now?

A. I can't tell you the words now.

Witness excused.

The foregoing is wholly insufficient upon which to base a suspicion, much less an inference, that the property levied upon was delivered, under the forthcoming bond, by the officer to the principal therein named. A bond given for the release of attached property is not operative, nor are the sureties liable thereon, unless the property has been delivered into the hands of the defendant. It is not necessary that the officer physically deliver the property. If he point out the same, and offer to surrender it to the defendant, it is sufficient. But nothing of that kind was done in this case, so far as this record discloses. For aught that appears the goods are still in the room where they were left at the time they were seized under the writs. Doubtless, as counsel for plaintiffs suggests, where such a bond has been accepted and approved, it is the duty of the officer to turn over the property to the defendant, and *mandamus* will lie to enforce the performance of such duty; but in this case, since the bond was rejected, Maben was not entitled to the possession of the goods, and we cannot indulge in the presumption that he has received them.

It is argued in the brief of plaintiffs that the sureties are estopped from asserting that their principal did not receive

the goods from the constable, by reason of the giving of the bond in controversy. The authorities cited in the brief do not sustain the contention of counsel. Some of the cases assert the familiar doctrine that a party will not be heard to dispute the recitals in his bond. Others are to the effect that where a forthcoming bond, given to release goods seized upon an attachment, has been approved by the officer and the attached property released, a surety cannot urge that the attachment proceedings were defective, or that the property did not belong to the defendant, or was incumbered, for the purpose of discharging himself from the obligation he assumed when he signed the bond. We do not controvert the propositions which the cited cases lay down, but these decisions are not applicable to the facts made by this record. Here the bond was never approved and accepted as such, and it would be a monstrous proposition to hold that the sureties will not be permitted to assert that their principal did not receive the goods from the officer, although it was executed by them to secure such release, simply because the bond was not returned to them. The undertaking of these sureties, had the bond been accepted, was, if the officer would deliver the goods to Maben, then, in case judgment should be rendered against him in the attachment suits, they would deliver the goods to the officer or pay him the amount of their value in money; but inasmuch as their principal never received the goods under the bond, the sureties are not liable in this action. The judgment is

AFFIRMED.