ORRIN A. COOPER ET AL. V. DAVIS MILL COMPANY.

FILED MAY 6, 1896. No. 6572.

1. **Attachment: REDELIVERY BOND: THIRD PERSONS: ESTOPPEL.** Section 206 of the Code of Civil Procedure provides that an officer who has levied a writ of attachment shall deliver the attached property to the person in whose possession it was found, upon his execution, with sureties, of an undertaking that the parties to the same are bound in double the appraised value thereof, that the property or its appraised value in money shall be forthcoming to answer the judgment of the court in the action. A stranger to the attachment suit in whose possession the attached property is found, and who has given such an undertaking, cannot, after judgment and order of sale in the attachment case, be heard to assert, in an action upon the undertaking, that he himself and not the attachment defendant was the owner of the property.

2. ———: ———: ———. In such case a person executing such undertaking is bound by its distinct terms to deliver the property or its appraised value in money to answer the judgment in the attachment case.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

See opinion for references to authorities.

*S. P. Davidson*, for plaintiff in error.

*Pound & Burr*, contra.

IRVINE, C.

The Davis Mill Company began an action in the district court of Lancaster county against Fredericks, Bailey & Co., and in said action caused an attachment to be issued and levied upon certain property, as the property of Fredericks, Bailey & Co., which was in the possession of Cooper at the time of the levy. Thereafter, Cooper, as principal, and John B. Wright, as surety, executed, under section 206 of the Code of Civil Procedure, the following undertaking:

"Whereas, Sam McClay, sheriff of Lancaster county, has, on this 21st day of September, 1891, attached certain goods and chattels in the hands of Orrin Cooper on an attachment issued out of the district court of Lancaster county, in an action pending therein, wherein R. T. Davis Mill Company is plaintiff and Fredericks, Bailey & Co. are defendants, which property is appraised at the sum of $675.65, and which property is now delivered to Orrin Cooper at his request:

"Now we, Orrin Cooper as principal and John B. Wright as surety, do hereby undertake to the plaintiff in the sum of $1,351.20 that said property, to-wit, two hundred sacks of flour, five show cases, and wrapping papers and paper bags, or its appraised value in money, shall be forthcoming to answer the judgment of the district court in the action and perform the judgment of said court, then this obligation to be void, otherwise to remain in full force and effect as provided by statute.

"ORRIN COOPER.<br>"JOHN B. WRIGHT."

The property was thereupon delivered by the sheriff to Cooper. Judgment having been rendered against Fredericks, Bailey & Co. and an order made for the sale of the attached property, suit was brought upon this bond. Cooper and Wright answered, alleging property in Cooper by virtue of a chattel mortgage antecedent to the attachment, and, a jury having been waived, the court found in favor of the plaintiff for the appraised value of the property. The defendants seek to have the judgment in pursuance of this finding reversed by these proceedings.

The record on its face presents two questions: First—Was the mortgage to Cooper valid as against the creditors of the mortgagor? Second—Can the defendants in this case be heard to set up property in themselves, or in one of them, as against an action upon their bond? The first question we do not find it necessary to consider. It is perhaps somewhat remarkable that the second ques-

tion has never before been presented in such a form as to
call forth a distinct decision. In *Hilton v. Ross*, 9 Neb.,
406, it was held that the giving of a redelivery bond
under section 206 does not preclude the defendant in the
attachment case from afterwards moving for a dissolu-
tion of the attachment; and this decision was followed in
*Wilson v. Shepherd*, 15 Neb., 15. These decisions we have
no disposition to question. On the contrary, we think
they are entirely right. The undertaking of the defend-
ants was merely that the property or its appraised value
in money should be forthcoming to answer the judgment
of the court in the attachment case. The defendant did
not stipulate that the judgment should be for the plaint-
iff, or that it should sustain the attachment. He was
left at liberty in the attachment case to resist the main
action and to resist the attachment itself, and his only
obligation was that the property or its value should be
forthcoming to answer any judgment which might be
rendered. If the attachment should be dissolved on his
motion, no judgment could be rendered which the prop-
erty would be required to answer. In the case now be-
fore us the bond was given by a third person, in whose
possession the property was found, and the attachment
case proceeded to judgment in favor of the plaintiff
therein, without dissolving the attachment, but on the
contrary, with an order subjecting the attached property
to sale in payment of the judgment. In *Cortelyou v.
Maben*, 40 Neb., 512, a bond given under the section in
question was held not obligatory because the officer had
refused to accept it, and it had therefore never become
operative; but in the opinion, after referring to cases
holding that after such a bond has become operative the
obligors cannot urge that the property did not belong
to defendant, the court said: "We do not controvert the
propositions which the cited cases lay down, but these
decisions are not applicable to the facts made by this
record." The question before us has never, then, been
decided by this court, although the judgment of the

lower court receives some implied support from the
*dictum* above quoted, which, however, was carefully
guarded to avoid its being considered as an authoritative
announcement of the law.   Looking elsewhere for light,
we are met by a wealth of adjudications;  but the cases
are so conflicting in their character that from authority
alone it would be difficult to reach a conclusion.  We
shall not attempt a complete review of these cases;  nor
shall we even attempt a classification which would em-
brace the whole number, or which pretends to scientific
exactness of analysis.  A general classification may, how-
ever, be made, which we think will aid somewhat, by
pursuit of the inductive method, to a solution of the
question before us.

The earlier cases, especially in New England, relate
not to bonds or to statutory undertakings, but to re-
ceipts.   In these the receiptor is treated merely as the
bailee of the officer holding the writ;  and while this
principle may not appear very prominently in the opin-
ions as controlling the decision of the court, it is very
obvious that in many cases it was the controlling feat-
ure.  We shall not undertake to separate the cases of
receipts from those of bonds or statutory undertakings;
but the distinction between these two classes of instru-
ments should be borne in mind in comparing the cases.

There is a class of cases in which it is held that the
liability of a receiptor depends upon that of the officer
holding the writ; that, therefore, if the goods were not
in fact subject to the attachment and passed into the
hands of their rightful owner, the officer not being liable
to the plaintiff in attachment, the receiptor was not so
liable to the officer. (*Jones v. Gilbert*, 13 Conn., 506; *Day-
ton v. Merritt*, 33 Conn., 184; *Morse v. Hurd*, 17 N. H., 246;
*Adams v. Fox*, 17 Vt., 361; *Learned v. Bryant*, 13 Mass.,
224; *Lathrop v. Cook*, 14 Me., 414; *Perry v. Williams*, 39
Wis., 339; *Williams v. Morgan*, 50 Wis., 548; *Billingsley
v. Harris*, 79 Wis., 103.) A modification of this doctrine
is observable in *Bursley v. Hamilton*, 15 Pick. [Mass.], 40,

which holds that in such case the fact that the defendant in attachment was not the owner is no defense to an action on the receipt, but goes in mitigation of damages. Akin to these cases is another class where it is held that the receiptor may show in defense that he has surrendered the property to a stranger under a paramount title. (*Learned v. Bryant*, 13 Mass., 224; *Fisher v. Bartlett*, 8 Me., 122; *Sawyer v. Mason*, 19 Me., 49; *Wood v. Goodwin*, 49 Me., 266; *Quine v. Mayes*, 2 Rob. [La.], 510; *Bauer v. Antoine*, 22 La. Ann., 145; *Koeniger v. Creed*, 58 Ind., 554.) Several of these cases very sharply draw the distinction between the receiptor's setting up property in himself and his setting up property in a third person, holding either distinctly that he is estopped from setting up property in himself or else that not only property in the third person must be alleged, but an actual surrender to him under a title paramount (*Learned v. Bryant, supra; Sawyer v. Mason, supra; Wood v. Goodwin, supra; Koeniger v. Creed, supra; Gray v. MacLean*, 17 Ill., 404); but this distinction is denied in *Perry v. Williams, supra.*

Still another class of cases is to the effect that a receiptor or obligor is bound by his contract to surrender the property according to its terms; but having done so, and thus discharged his bond, he may then institute an appropriate action setting up title in himself. (*Johns v. Church*, 12 Pick. [Mass.], 557; *Robinson v. Mansfield*, 13 Pick. [Mass.], 139; *Bleven v. Freer*, 10 Cal., 172; *Gaff v. Harding*, 66 Ill., 61.)

In a few of these cases there lurks a hint of a very interesting distinction which the facts of this case do not render it necessary for us to closely examine. These are cases of foreign attachment where it seems that one executing a redelivery bond may show that the facts justifying the issuing of the attachment did not exist, for the reason that the jurisdiction of the court depended upon those facts. The attachment cases were proceedings *in rem;* and if jurisdiction did not exist the officer was without any right to hold the property, and there-

fore the bond was without consideration. (See *Billingsley v. Harris*, 79 Wis., 107; *Murphy v. Montandon*, 2 Ida., 1048, and also certain early Louisiana cases.) In a few cases the bond, by express terms, admitted that the property was that of the defendant in attachment; and the cases were resolved on the ground that this admission was conclusive upon the parties. Analogous to this class of cases is *Smith v. Jewell*, 14 Gray [Mass.], 222, where it was held that a surety on a redelivery bond could set up a mortgage from the principal, who was also the defendant in the attachment suit, in defense of the action, because the bond expressly, by its recitals, reserved to him the right to do so.

In *Easton v. Goodwin*, 22 Minn., 426, it was held that where the defendant himself executed the receipt, he would not be permitted to set up title in a stranger. This case went largely, however, upon the doctrine of estoppel *in pais*.

The following cases hold, some of them in regard to receipts and some in regard to bonds, that the receiptor or obligor is bound by the terms of his undertaking to deliver the property, and that he cannot be heard to set up title adversely to the claims of the plaintiff: *Staples v. Fillmore*, 43 Conn., 510; *Birdsall v. Wheeler*, 58 Conn., 429; *Morrison v. Blodgett*, 8 N. H., 238; *Pierce v. Whiting*, 63 Cal., 538; *Dezell v. Odell*, 3 Hill [N. Y.], 215; *People v. Reeder*, 25 N. Y., 302; *Cornell v. Dakin*, 38 N. Y., 253; *Haxtun v. Sizer*, 23 Kan., 310; *Wolf v. Hahn*, 28 Kan., 588; *Bishop v. Steele*, 34 Kan., 90; *Peterson v. Woollen*, 48 Kan., 770; *Dorr v. Clark*, 7 Mich., 310. We call particular attention to the Kansas cases cited, because they are under statutes like our own. Other cases, not so closely in point, but the reasoning in which fully sustains the judgment of the lower court in this case, are the following: *Spencer v. Williams*, 2 Vt., 209; *Jewett v. Torrey*, 11 Mass., 219; *Bacon v. Daniels*, 116 Mass., 474; *Foltz v. Stevens*, 54 Ill., 180; *Hopping v. Burnam*, 2 G. Greene [Ia.], 39; *Burk v. Webb*, 32 Mich., 173; *Stowell's Administrator v. Drake*, 23 N. J. Law, 310.

Examining the foregoing cases with a view to ascertaining the true principles of law which should govern the question, there is, first, a general disposition observable to work out the liability of the obligors or receiptors through that of the officer holding the writ. This may be well enough when the obligation runs to the officer, and not, as in this case, to the plaintiff himself. But the rule observed tends too much in the direction of satisfying the demands of a general equitable adjustment, rather than the enforcement of contracts as made, to commend it greatly to the consideration of courts which regard it as their province to adjust controversies according to the rights of the parties as fixed by law, rather than to assume a general guardianship and supervisory power over the contracts of suitors. Second, some of the courts, in cases of receipts, as will be observed from an examination of the cases cited, have regarded these instruments as technical receipts and therefore open generally to contradiction by parol evidence. Such cases are clearly not applicable to the one before us. Third, a large number of cases are resolved solely on the doctrine of estoppel; and these, in jurisdictions where the distinction is retained between deeds and simple contracts, have naturally sought for the estoppel, not as an estoppel of record or by deed, but as an estoppel *in pais*. This has led to a distinction some places observed between cases where the receiptor has informed the officer at the time of receiving the property that he claimed an interest in it, and those where he has concealed such an interest and thereby placed the officer or the plaintiff at a disadvantage. Fourth, the cases where a receiptor is allowed to set up title in a third person are not in point. They are resolved under the general rule that a bailee may surrender to the true owner, and if he do so he is not liable to his bailor. Fifth, the cases which turn upon the court's jurisdiction over the property are not here in point. In this case the attachment was not based on the non-residence of the defendant; nor was it claimed that

the writ was illegally issued; so that it cannot be claimed that the bond was without consideration. The delivery of the property to the obligor is a sufficient consideration, if one is required for a statutory bond. All the cases where the attachment was not illegally issued so hold. We think, therefore, that the cases which seem to favor the contention of the defendants herein are either not in point or were decided on grounds which are not tenable as applied to the facts of the present case. We do not regard the question as one of estoppel, except in so far as every man may be said to be estopped from setting up claims contrary to his express, deliberate, and lawful contract obligations. The true line, the consistent line, of authorities is that which holds the defendant to the terms of his contract and requires him to perform it as he has obligated himself to do. If he has made a foolish contract the courts cannot relieve him; provided he is competent to contract, the contract is legal and was not accomplished by fraud, mistake, or duress. In this case the defendants have unconditionally, clearly, lawfully, deliberately, and freely obligated themselves that the property or its appraised value in money should be forthcoming to answer the judgment in the attachment case. The judgment has been rendered in that case and it requires a resort to the property. Whether they might have been heard in the attachment case, after giving the undertaking, to assert their rights, or whether, as indicated by some of the cases we have cited, they might have delivered the property in pursuance of their undertaking, and thus having discharged it, afterwards asserted a claim thereto, we cannot and do not now decide. What we hold is that their bond absolutely required them to deliver the property or its value to answer the judgment, and that they cannot be now heard to assert title in themselves as against the terms of their bond.

JUDGMENT AFFIRMED.