## HUISH v. FENKELL et al.

No. 5327. Decided December 27, 1934. (39 P. [2d] 330.)
Rehearing Denied February 9, 1935.

254

*Harvey Cluff,* of Salt Lake City, for appellants.
*Claude F. Baker,* of Eureka, for respondent.

ELIAS HANSEN, Justice.

Plaintiff brought this action to recover on a dissolution bond which the defendants executed for the purpose of securing the release of an automobile from an attachment levied by the plaintiff in an action against the defendants Fenkell. The bond reads as follows:

"Know all men by these presents, That we P. D. Fenkell and Ida Fenkell, of Eureka, Utah, as principal, and Mrs. Agnes O'Connor and Robert Laird of Eureka, Utah, as surety, are held and firmly bound unto Charles E. Huish, execution plaintiff in the above entitled case in the District Court of Nephi, Juab County, Utah, in the sum of five hundred dollars, for the payment of which well and truly to be made and done, we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally, firmly by these presents.

"Sealed and dated at Eureka, Juab County, Utah, this 25 day of June, 1931.

"The condition of the above obligation is that, whereas, D. J. Sullivan, Sheriff of Juab County, by virtue of an attachment issued out of the said court, has seized and taken into possession a certain automobile Serial No. DL2214, Motor No. 125861, and bearing plate No. 42647, as the property of the above bounden Ida Fenkell, defendant in said cause.

"Now, therefore, the condition is such that if said property shall be kept and taken care of, and delivered to the said Sheriff on demand, to satisfy any judgment which might be recovered against the said P. D. Fenkell and Ida Fenkell in the said cause, or if they shall pay the appraised value of said automobile, not exceeding the amount of the judgment and costs, or shall pay the judgent and costs which may be awarded against them and in favor of the said Charles E. Huish, in said cause, then and in that event this obligation shall be void, otherwise to remain in full force and effect.

"[Signed]    Paul D. Fenkell, Principal
"Mrs. Ida Fenkell, Principal
"Mrs. Agnes O'Connor, Surety
"Robert Laird, Surety."

A trial to the court sitting without a jury resulted in a judgment in favor of the plaintiff and against the defen-

dants for the amount of a judgment theretofore rendered in favor of the plaintiff and against the defendants Fenkell. Defendants appeal. They attack the judgment appealed from upon two grounds, viz.: First, that plaintiff's complaint is fatally defective, in that it fails to allege the value of the automobile which was released from the attachment, and for that reason fails to state a cause of action; second, that there was a failure of consideration for the bond sued upon in that the attached automobile did not belong to the Fenkells, and also in that, notwithstanding the court below directed the sheriff to return the attached automobile to the defendants Fenkell, the sheriff failed to so return it.

The sufficiency of the complaint to state a cause of action was brought in question in the court below by the defendants filing a general demurrer thereto. The same question was also raised by defendants moving for a nonsuit at the conclusion of the plaintiff's evidence in chief because the evidence failed to show the value of the automobile in question. The overruling of defendants' demurrer to the complaint and the denial of their motion for a nonsuit are assigned as error. It is in substance alleged in the complaint: That plaintiff commenced an action to recover a money judgment in the sum of $300 principal, interest and costs, from the defendants Fenkell; that in such action plaintiff filed his affidavit and undertaking on attachment; that a writ of attachment issued pursuant to which the sheriff of Juab county, Utah, levied upon the automobile; that thereafter defendants executed the bond sued upon in this action and, over plaintiff's objection, the attached automobile was, by the court, ordered released from the attachment; that prior to the release of the automobile from the attachment the defendants Fenkell made, executed, and delivered to the Commercial Credit Company a title retaining note or order investing such company with all the legal title and right to possession theretofore held by the Fenkells; that, pursuant to such title retaining note and order so executed by the Fenkells, the Commercial Credit Company demanded and secured

from the sheriff the possession of the automobile on behalf of the defendants; that plaintiff has secured a judgment against the defendants Fenkell in the sum of $300 principal, $76.09 interest, and $21.90 costs; that plaintiff caused execution to issue on the judgment so recovered by him against the Fenkells, and the same was returned wholly unsatisfied; that, after such execution was returned unsatisfied, plaintiff caused to be served upon each of the defendants in this action a written demand and notice in which defendants were notified of the amount of the judgment rendered in favor of plaintiff and against the Fenkells that such judgment was wholly unsatisfied; and that execution had issued thereon and returned unsatisfied; that demand had been made upon defendants to return to the sheriff of Juab county, Utah, on or before a date specified the automobile theretofore released from the attachment, or, in case of a failure to so deliver the automobile, that defendants pay to the sheriff "the full amount of the judgment with costs and accruing costs, which said judgment is less than the full value of the property so released." It was further alleged in the complain that the judgment against the Fenkells remained wholly unpaid, and that they refused to return the automobile which was released from the attachment. Plaintiff prayed judgment against the defendants for the amount owing upon the judgment theretofore rendered against the Fenkells. It is appellants' contention that plaintiff in the present action is limited in his recovery in all events to the value of the automobile as of the time the same was released from the attachment. Our attention is directed to provisions of R. S. Utah 1933, 104-18-21 and 104-18-22. It is there provided:

104-18-21: "Whenever the defendant has appeared in the action he may, upon reasonable notice to the plaintiff, apply to the court in which the action is pending, or to the judge thereof, for an order to discharge the attachment levy in whole or in part; and upon the execution of the undertaking mentioned in the next succeeding section, an order may be made releasing from the operation of the attachment any or all of the property attached; and all of the property so re-

leased and all of the proceeds of the sales thereof must be delivered to the defendant upon the justification of the sureties on the undertaking, if required by the plaintiff."

104-18-22: "Before making such order the court or judge must require an undertaking on behalf of the defendant, by at least two sureties, residents and freeholders or householders in the state, to the effect that in case the plaintiff recovers judgment in the action, the defendant will, on demand, deliver the attached property so released to the proper officer, to be applied to the payment of the judgment, or, in default thereof, that the defendant and sureties will, on demand, pay to the plaintiff the full value of the property released. The court or judge making such order may fix the sum for which the undertaking must be executed, and if necessary in fixing such sum to know the value of the property released, the same may be appraised by one or more disinterested persons, to be appointed for that purpose."

It will be observed that the undertaking involved in this action is somewhat unlike the bond provided for in the sections just quoted. By the terms of the bond here involved the signers thereof undnertook, in the event plaintiff recovered a judgment against the Fenkells, to either ▉▉▉ return the automobile, or pay the appraised value thereof not exceeding the amount of the judgment, or pay the amount of the judgment and costs which plaintiff might recover against the Fenkells. No claim, however, is or could successfully be made that the bond was invalid because it is not strictly in compliance with the provisions of the sections above quoted. The liability of the signers of the bond is fixed and limited by its provisions. It may readily be conceded that the signers of the bond could have been relieved from further liability on the bond by a timely return of the automobile if it was in the same condition as when released, or by paying the appraised value thereof not exceeding the amount of the judgment recovered by the plaintiff against the Fenkells, or by the payment of such judgment and costs. It is, however, alleged in the complaint that the defendants, after demand made, failed and refused to comply with any of the three alternatives mentioned in the undertaking. Under such circumstances the option passed to

the plaintiff to elect which of the alternative undertakings he would rely upon. Page on Contracts, vol. 5, § 2799, p. 4956; 13 C. J. 630, and cases there cited. Defendants cite and rely upon the case of *Blume* v. *Berry,* 98 Cal. App. 30, 276 P. 133. It is apparent that the bond involved in the cited case was quite unlike the bond in the instant case. The bond in the cited case provided that the signers thereof would pay to the plaintiff the full value of the property released. There was no provision in that bond that the signers thereof would pay the judgment or any unsatisfied portion thereof. In this case one of the alternative provisions of the signers of the bond was that they would "pay the judgment and costs which may be awarded against them (Fenkells) and in favor of the said Charles E. Huish." Defendants' demurrer to the complaint was properly overruled. What has been said with respect to the overruling of the demurrer applies to the denial of defendants' motion for a non-suit. It may be observed in this connection that in their answer defendants deny all liability on the bond. No claim is made by them that they have or intend to elect to perform any of the alternative conditions mentioned in the bond. Moreover, so far as appears, the automobile was never appraised and no claim is made that the value of the automobile was not equal to or greater than the amount of the judgment. No error was committed in denying defendants' motion for a nonsuit.

It is next urged that the judgment should be reversed because the automobile in question did not belong to the Fenkells. The evidence touching that question is very meager. It does appear from affidavits and pleadings filed in the case of Charles E. Huish v. P. D. Fenkell and Ida Fenkell, which affidavits and pleadings were received in evidence without objection in the instant case, that the automobile in question was, at the time it was attached, in the possession of the Fenkells and was registered in the name of the Commercial Credit Company of Salt Lake City as holding the legal title thereto, and Ida Fenkell as

being the equitable owner thereof. It also appears from the files received in evidence that Beatrice B. Mack, by leave of court, filed a complaint in intervention in that action. In that complaint she averred that the automobile which was attached by the sheriff belonged to her subject to the payment of $167 which was owing to the Commercial Credit Company on the purchase price thereof, and that neither of the defendants P. D. Fenkell or Ida Fenkell had any right, title, ownership, or equitable interest therein. To the complaint in intervention so filed by Beatrice B. Mack, the plaintiff filed a general demurrer. The demurrer was sustained and leave given to amend. So far as appears, no such amended complaint in intervention was filed. It further appears from the files in the action of Huish v. Fenkells that Beatrice B. Mack and the Commercial Credit Company made written demand upon Huish and the sheriff to release the attached automobile and return it to Ida Fenkell. In support of the demand an affidavit of Ida Fenkell was filed in the cause. In the affidavit Mrs. Fenkell averred that her daughter Beatrice B. Mack "has made all payments that have been made on the purchase price of said automobile, and is the owner of and entitled to the equity in same," and that affiant Ida Fenkell "has no right, title or claim whatever in and to said automobile, other than that the said Beatrice B. Mack has permitted her to have the same in her possession and use it when the said Beatrice B. Mack is out of the State of Utah." Evidently the demand was not complied with, and, so far as appears, neither Mrs. Mack nor the Commercial Credit Company took any measures to enforce compliance with the demand. The next step taken to release the attached automobile came from the Fenkells when they moved the court to release the automobile from the attachment and tendered the bond sued upon in the present action. As already stated in this opinion, they were successful in having the attachment released upon giving the bond in lieu thereof. Upon this record it may not be said that the defendants Fenkell were without any right, title, or in-

terest in the automobile. That question has not been tried or determined. The fact that Mrs. Fenkell was in possession of the automobile when it was attached, and the further fact that it was registered in her name as the equitable owner thereof in the office of the secretary of state, was some evidence that she had an interest therein. Moreover, it is, to say the least, very doubtful if the defendants are in a position in this action to question the title to the automobile, they having executed the bond for the release of the attachment. *Larsen* v. *Richards et ux.*, 43 Utah 196, 134 P. 583.

It is finally urged on behalf of defendants that the judgment appealed from should be reversed because the sheriff did not return the automobile to the Fenkells after the attachment was ordered released. The record before us bearing on that phase of the case is as follows: At the time the hearing was had on the motion to release the attachment, the court made an oral order as shown by the minute entry received in evidence as a part of the files in the case of *Huish* v. *Fenkells* wherein it was directed that "said defendants offering in open court a bond for the delivery of automobile held under writ of attachment in this cause, and testimony being submitted in support of the bond, it is ordered that said automobile be released by the sheriff in behalf of the bond." The minute order bears date June 29, 1931. On the following July 20th there was filed in the cause a written order signed by the judge wherein it was ordered "that the attachment by which the car hereinbefore mentioned and described was taken into custody and possession by the sheriff of Juab County, be, and the same is hereby discharged, and the said sheriff D. J. Sullivan, is hereby ordered to forthwith and without delay, deliver the said car back to the garage of the defendants from whence it was taken by him under said attachment, and that said delivery be made without further costs to the defendants at this time pending the final determination of the issues by this court." On the day following the sheriff made return:

"That as ordered by the court heretofore on June 30, 1931, he ordered Carson's Garage to release to defendants the said car or automobile described in said order.

"That heretofore, and prior to the receipt of the foregoing order the Commercial Credit Company took into its possession said car according to information received from Carson's Garage.

"Said Commercial Credit Company claims a title prior to defendants, and has repossessed said automobile according to the best information and belief of D. J. Sullivan."

Under date of January 20, 1932, the sheriff made an additional return as to what he did with respect to the release of the automobile. In that return he reported that on May 27, 1931, he attached the automobile in question and took the same into his possession; that he retained such possession until on or about June 29, 1931, when, pursuant to the order of the court directing him to release the automobile, he, at defendants' request and order, delivered the same to "the Commercial Credit Company of Salt Lake City, Utah, a corporation, which said corporation claimed under defendants by a written order and title retaining note made, executed and delivered by defendants theretofore to said corporation, as shown on the records of the Secretary of State of Utah, and as set forth by defendants and intervener heretofore in said cause; that said order and note gave to said corporation all the legal title and right of possession to said car or automobile, subject only to the plaintiff's attachment rights, then and there belonging to defendants. That said corporation then and there demanded said automobile from me, and pursuant to the court's order, and pursuant to defendants' written order and note, I therefore delivered to said corporation said automobile, which said corporation had all rights of possession to said automobile belonging to defendants." Defendant Paul D. Fenkell was the only witness called by the defendants. After being examined as to some preliminary matters, he was asked the following question, and, over timely objection on behalf of plaintiff, gave the following answer:

"Q. Has that car ever been returned by the sheriff to you, or to either of the defendants in this action, or anyone for them? A. No."

The foregoing is all of the evidence touching the release of the attached automobile by the sheriff. It is said in 2 R. C. L. § 57, p. 845:

"That the return of the sheriff or other officer of matters material to be returned upon a writ, is evidence, seems to be generally admitted. And it is not necessary in order to its admission as evidence that the action should have proceeded to judgment and the return have thus become a matter of record. The return when required by law is, according to some authorities, the only proper evidence of what was done by the officer thereunder, and no omission therein of any fact may be supplied by other proof. But when the statute does not make the officer's return conclusive or the only evidence of the manner of executing process there seems to be no reason why the facts may not be shown by other competent evidence, provided it is not attempted to contradict the return. Whether the return is to be accepted as conclusive or as only prima facie evidence is a matter of some doubt. It may be conceded to be the general rule that it may not be contradicted by parol evidence. As between the parties to the suit and those claiming under them as privies, and all others whose rights and liabilities are dependent upon the suit, the return is conclusive. It is not conclusive, however, as to third persons whose interests, while not connected with the suit, yet may be affected by the proceedings of the officer. And a return embracing matters not required by statute, or which relate to acts done outside of the officer's duty, is not receivable as evidence of such facts, nor does it in any way conclude the parties."

To the same effect is Jones' Comm. on Evidence (2d.) vol. 4, p. 3534, § 1902 et seq. The statements made by the sheriff in his return with respect to matters relating to the ownership of the automobile, the persons entitled to the possession thereof, etc., are obviously not evidence of such facts, but the statement in the sheriff's return that he delivered the automobile to the Commercial Credit Company upon defendants' request and order is evidence of such facts.

The view is expressed in a dissenting opinion that no part of the additional return of the sheriff has any evidentiary value because it was not timely filed, and also because it

was apparently filed without leave of court. Had objection been made to the admission in evidence of the sheriff's additional return for such reasons, it may be conceded that such an objection should have been sustained. But no such or any objection was made to the reception in evidence of the sheriff's additional return. Defendants having failed to question the compentency of the sheriff's additional return, they thereby waived any objection that they might have urged against its admissibility.

The only evidence which is claimed to contradict the sheriff's return is the testimony of Paul D. Fenkell. His testimony and the return of the sheriff are agreed that the automobile was not returned to the defendants personally. The only evidence which tends even remotely to contradict the statement of the sheriff's' return that he delivered the automobile to the Commercial Credit Company upon the defendants' request and order is the testimony of Fenkell that the sheriff did not deliver the automobile to "anyone for them." So far as appears from this record no claim was made by any one that Paul D. Fenkell was entitled to possession of the attached automobile. It does appear from affidavits and pleadings filed in the cause of Huish v. Fenkells that claims were made that Ida Fenkell was entitled to its possession for and on behalf of her daughter, Beatrice B. Mack, the equitable, and the Commercial Credit Company, the legal, owner thereof. It is not made to appear that P. D. Fenkell had knowledge or information as to whether his wife Ida requested and ordered the sheriff to deliver the attached automobile to the Commercial Credit Company. The testimony of Mr. Fenkell that the sheriff did not deliver the automobile to any one for the defendants is a bare conclusion and as such without probative value.

Moreover, it is alleged in defendants' answer in this cause that the sheriff failed, neglected, and refused to redeliver said car to the Fenkells who therefore "were unable to

protect the title of Beatrice B. Mack in and to said car * * * and neither the sheriff nor the said ▮▮▮ plaintiff made any attempt to protect the equity in said automobile although they knew full well and had been informed that the Commercial Credit Company of Salt Lake City, Utah, held the title retaining note thereto and finally while said automobile was still in the possession of said sheriff the said Commercial Credit Company, of Salt Lake City, Utah, acting under authority of the title retaining note it held repossessed itself of said car and resold the same." It is apparent from the pleadings just quoted that defendants seek to escape liability in this action because neither the plaintiff nor the sheriff paid the $167 which they claim was owing the Commercial Credit Company on the purchase price of the automobile. When the attachment was released and the bond substituted therefor, plaintiff was deprived of his lien on the automobile. He was under no obligation to finish paying for the car. Nor did the sheriff owe any duty to the defendants to pay to the Commercial Credit Company the amount remaining unpaid on the purchase price of the automobile. *Patch* v. *Wessels,* 46 Mich. 249, 9 N. W. 269. The fact that the Commercial Credit Company took possession of the automobile, either by virtue of its title retaining note as alleged by defendants in their answer, or by virtue of a request made to the sheriff by the defendants as stated in the sheriff's return, defeats defendants' claim that they should be relieved of liability on the bond because the automobile was not returned to the Fenkells.

The judgment is affirmed. Costs to respondent.

FOLLAND and MOFFAT, JJ., concur.

STRAUP, Chief Justice (dissenting).

I dissent. The respondent, Huish, brought an action May 27, 1931, on a promissory note for $300 against the defendants Paul D. and Ida Fenkell, husband and wife. At the same time he caused a writ of attachment to issue and put

in the hands of the sheriff, which on the same day was served, and, in pursuance thereof, an automobile "belonging to the defendants," so recited by the sheriff's return to the writ, was seized and taken into his possession and custody. On June 6th the Commercial Credit Company, claiming to be the legal owner of the automobile by reason of a title retaining note, and Beatrice Mack claiming to be the equitable owner, served written notice on the sheriff demanding that the automobile be released and the possession thereof returned to the defendant Ida Fenkell. The demand was refused.

Thereupon the defendants Fenkells, June 25, to obtain a release of the automobile from the attachment, executed and delivered the redelivery bond or undertaking set forth in the prevailing opinion. On June 29, on service of motion for a release or discharge of the attachment, both parties appearing by counsel, the court, after reciting that the redelivery bond had been given and the sureties approved by him, directed and ordered that the attachment be discharged "and the said car (the automobile) redelivered to the defendants," and that, by reason of the facts and of the redelivery bond as by the statute required, "it is hereby, by the court, ordered and decreed that the attachment by which the car hereinbefore mentioned and described was taken into custody and possession by the sheriff of Juab County be, and the same is hereby, discharged, and the said sheriff, D. J. Sullivan, is hereby ordered forthwith and without delay to deliver said car back to the garage of the defendants from whence it was taken by him under said attachment," and that the delivery be made without further costs to the defendants. A copy of the order was served on the sheriff. On July 21, 1931, he made return to the order as follows:

"Return.

"D. J. Sullivan hereby certifies:

"That as ordered by the court heretofore on June 30, 1931, he ordered Carson's Garage to release to defendants the said car or automobile described in said order.

"That heretofore, and prior to the receipt of the foregoing order the Commercial Credit Company took into its possession said car according to information received from Carson's Garage.

"Said Commercial Credit Company claims a title prior to defendants, and has repossessed said automobile according to the best information and belief of D. J. Sullivan.

"All charges of Carson's Garage have heretofore been paid, according to the best information and belief of D. J. Sullivan.

"Dated July 21, 1931.

"[Signed]   D. J. Sullivan,
"Sheriff, Juab County, Utah."

The return was filed in the clerk's office July 22, 1931, and thus became a part of the court records of the cause. What the court thus ordered the sheriff to do was, forthwith and without delay, to return the automobile to the defendants Paul and Ida Fenkell, at their garage, where it was taken by the sheriff on the writ of attachment. By the statute, R. S. Utah 1933, 104-18-21, it is provided that, when attached property is released by the giving of a redelivery bond or undertaking approved by the court, the property so released "must be delivered to the defendant." That is what the court directed the sheriff to do. But the sheriff's official return shows he did not do so. By the redelivery bond, the order of the court discharging the attachment and directing the sheriff to deliver the automobile back to the defendants, and by the record, it indisputably is shown that the sheriff had taken possession of the automobile and held it under the writ of attachment. If he had not so seized and held the automobile, the giving of the undertaking to release the attachment, the court approving the undertaking and ordering the property released from the attachment and delivered back to the defendants, was a mere idle ceremony. The return so made by the sheriff in pursuance of the order shows that, instead of complying with the order as he was directed to do, he certified that prior to the receipt of the order he was informed that the Commercial Credit Company had taken possession of the automobile; that the company claimed "title prior to the

defendants and had repossessed said automobile," according to the information and belief of the sheriff. How or in what manner or by what process the company took the automobile from the custody of the sheriff, or by what means the company got or acquired possession of the automobile, was not by the return explained. The effect of the sheriff's return is that no redelivery of the automobile was made by him, either to the defendants or to the Commercial Credit Company, or that he delivered the automobile to the Commercial Credit Company at the request or order of the defendants or either of them.

There, so far as any further return of the sheriff in such particular, the matter stood until after judgment in the action against the Fenkells on the promissory note and in which action the writ was issued and the automobile seized. Such judgment was recovered by the plaintiff against the Fenkells in the sum of $376 and costs, December 24, 1931, and upon which execution was issued and returned unsatisfied. On January 7, 1932, notice of the judgment, the issuance and return of the execution unsatisfied, the failure of the defendants Fenkell to pay the judgment or return the automobile, was served on the sureties of the undertaking and demand made on them to "deliver the automobile to the sheriff," and, upon their failure so to do, to pay the judgment including costs. The judgment not having been paid and the automobile not delivered to the sheriff, this action was commenced against the Fenkells and the sureties on the redelivery bond or undertaking. The complaint was sworn to January 21 and was filed January 25, 1932. At the same time the sheriff, January 20, signed, and on January 25 filed, what is termed, "Sheriff's Return on Attachment, Execution, Demand under Redelivery Bond," etc. The so-called return consists of closely typewritten lines on two full pages of typewriting of more than fifteen folios of one hundred words each. Such return was not designated as and does not purport to be any amendment to any return theretofore made and filed by the sheriff, nor was it made or

filed by leave of court. It apparently was made and filed contemporaneously with the commencement of this action and in aid thereof, and so that the recitals therein contained might be used as record evidence of facts therein recited, without resort to other evidence, and so was used by the plaintiff and regarded by the trial court.

I readily concede that recitals of official returns made by an officer as to service of process, etc., required by law to be made, and of official returns required to be made to orders of courts, are at least prima facie evidence of facts so properly recited; and as stated in 6 C. J. 261, that:

"The return to a writ of attachment is competent evidence to prove the fact and manner of the levy and the nature of the property taken thereunder, and is at least prima facie evidence of the facts recited therein."

But the so-called return filed on the same day this action was commenced, and in aid thereof, is a misnomer. The mere naming or calling it a "return" means nothing. It in some particulars constitutes mere narrative recitals or a history of returns theretofore made, in some an enlargement of them, and in many other particulars of recitals not required nor pertinent to be made. It contains a history or recitals of twelve enumerated propositions, including the issuing of the writ of attachment, service of the writ, taking possession of the automobile in pursuance of the writ, the release of the attachment in pursuance of the redelivery bond and order of the court, what the sheriff did or failed to do in pursuance thereof, a copy of the redelivery bond, the rendition of the judgment against the Fenkells, the service of an execution upon them and returned unsatisfied (all memorials of court records), notice to the sureties that the judgment had not been paid and demand made on them that the automobile be returned to the sheriff or that they pay the judgment, and the failure of the sureties to deliver up the automobile or pay the judgment (matters dehors any official return). In other words, the so-called return consists of recitals or a history of about all of the proceedings in the

cause from the issuance of the writ of attachment to and including the commencement of this action. In such so-called return, it is recited that the sheriff received the writ of attachment, made a return thereof on May 27, 1931, that he served it on the defendants Fenkell on the same day and in pursuance thereof seized and took into his possession the automobile, describing it, which, as recited, belonged to the defendants, and kept and retained it, until January 29, 1931, when the redelivery bond was given and the order of the court made discharging the automobile from the attachment. Such recital is but a history of the prior return made by the sheriff to the writ of attachment, and which by the statute, R. S. Utah 1933, 104-18-7, he was required to make "within twenty days after its receipt, with a certificate of his proceedings indorsed thereon or attached thereto." What the sheriff in such respect recited in such prior official return, let it be conceded, except in some particulars, is prima facie evidence of the facts so recited. What the sheriff six or nine months thereafter by the so-called return recited on the eve of this lawsuit is but a mere narration or history of the memorials as shown by the original official return, and, hence, is not in such respect prima facie evidence of anything. In the so-called return filed at the same time the action was commenced, the sheriff further recited that, "when the court in the above entitled cause made and entered its order authorizing the acceptance by him of a redelivery bond tendered by defendants, and discharging the attachment (the court accepted and approved the undertaking and discharged or released the attachment), theretofore placed against said automobile in consideration of said bond, that I thereupon released said automobile from said attachment (the court did that), and shortly thereafter delivered said automobile to defendants, to wit, by delivering at defendants' request and order said automobile to Commercial Credit Company of Salt Lake City." It then is further recited that such company claimed "title by a retaining note made, executed and delivered by defendants

theretofore to said corporation, as shown on the records of the Secretary of State of Utah," and that such order and note gave the Commercial Credit Company all the legal title and right of possession to the automobile, subject only to plaintiff's attachment rights, then and there belonging to defendants; and that the Commercial Credit Company then and there demanded the automobile "from me and pursuant to the court's order, and pursuant to the defendants' written order and note, I therefore delivered to said corporation (the Commercial Credit Company) said automobile, which said corporation had all rights of possession to said automobile belonging to defendants." It is difficult to understand how such latter recitals no matter how returned, much less by a spurious return, may be considered as prima facie evidence as they were of the facts so recited or as of any evidenciary value.

What order was made by the court approving the redelivery bond, discharging or releasing the attachment, and directing a redelivery of the property by the sheriff, is to be shown by memorials of records of the court and not by narrative recitals by the sheriff. What, in pursuance of the order, was done by the sheriff is to be shown by the return and certificate indorsed thereon or attached thereto and filed by him as heretofore shown and referred to, and not by his mere narrative recitals made and filed six or nine months thereafter on the eve of the commencement of this action. As is seen by such prior official return filed by the sheriff, he certified, not that he in pursuance of the order delivered the automobile to the defendants, or to any one at their request, or on their order, or that he at the request or order of the defendants delivered it to the Commercial Credit Company, but that, "prior to the receipt of the foregoing order, the Commercial Credit Company took into its possession said car,' according to information received by the sheriff, and that the company claimed title thereto "prior to the defendants," according to the information and belief of the sheriff.

Now, six or nine months thereafter, and without leave of court, the sheriff filed his so-called return wherein it is recited, on the court's order authorizing him to accept the redelivery bond and discharging the attachment, "that I thereupon released said automobile from said attachment and shortly thereafter delivered said automobile to the defendants, to wit, by delivering at defendants' request and order said automobile to the Commercial Credit Company," which company, as he recited, had title thereto prior to the defendants by reason of a title retaining note. Such recitals that the sheriff delivered the automobile to the defendants by delivering it to the Commercial Credit Company at the request and order of the defendants is inconsistent with the prior and official return filed in the cause and certified to by him. But whether regarded as being so inconsistent or not, the official return theretofore made and filed by the sheriff of what was done by him in pursuance of the court's order, until amended by leave of court, is the proper memorial thereof, and not what the sheriff may, six or more months thereafter and after judgment in that cause, file and certify to without leave of court.

I thus under the stated circumstances cannot yield assent to a holding that such mere narrative recitals of records and proceedings of the so-called return, filed at the commencement of this action and by reference made a part of the complaint and by the court "adopted as a part of the complaint," and considered as evidence of facts therein recited, may so be considered, either as prima facie evidence or as having any evidenciary value. I concede that, upon a proper showing made, the court, in its discretion, may grant leave to amend a return made by an officer in his official capacity. But no such application was made or leave had. Without such leave of court, an officer has no authority to amend a return which has been filed by him and which has become a part of the record, except perhaps as to mere clerical errors not involving substance. In 6 C. J. 257 it is said:

"The return to a writ of attachment as well as the inventory, may be amended so as to show the real facts. But while it has been held that an officer has an absolute right to amend his return to conform to the facts, at any time before the cause is submitted to the jury, the better rule seems to be that he can amend without leave of the court only before the return becomes a part of the record, and after that time leave of court must be obtained."

Says Drake on Attachment (6th Ed.) 194, 195, that:

"When an attachment has been returned, the return is beyond the reach of the officer and of the court into which it is made, unless a proper case be presented for the court to grant leave to amend it. * * * As a general proposition every court may allow amendments of returns upon its process. All applications for the exercise of this power are addressed to the sound legal discretion of the court, to be determined by the nature and effect of the proposed amendment. * * * An officer cannot as matter of right amend a return he has once duly made. This would be to place at his discretion the verity and consistency of records, and the effect and authority of the most solemn judgments. But until the process is actually deposited in the clerk's office, the return does not become matter of record, even though the officer keep the process in his possession long after the time when it should be returned; and until the return is actually made, the process is under his control and in his power and he does not need the authority of the court to amend it."

Here the sheriff, by his prior official return filed by him, certified what he did in pursuance of the order of the court with respect to releasing the attached property and a redelivery thereof in the cause in which the attachment was procured and the property seized and taken into possession by the sheriff. It was not until after that cause had gone to judgment, and the complaint filed in this action, that the sheriff, without leave of court, filed the so-called return thereby in effect attempting to amend his prior official return theretofore filed, and ingrafted something on it not contained therein.

The facts as recited in the so-called return, and made a part of the complaint as to a redelivery of the automobile after the redelivery bond, were by the answer of the de-

fendants denied, and the contrary alleged that the sheriff failed, neglected, and refused to redeliver the automobile to the defendants or to either of them. No evidence of any such redelivery as stated in the so-called return was given other than as shown by such return itself filed at the commencement of this action. Evidence was given on behalf of the defendants, that the automobile was not returned to either of the defendants or to any one for them. That was not disputed by any evidence in the case except by the so-called spurious return.

In view of all this, how stands the case? As is seen by the statute, R. S. Utah 1933, 104-18-21, it is expressly provided that, upon the giving of an undertaking approved by the court and an order made releasing the attached property from the operation of the attachment, the property "must be delivered to the defendant." Upon such an application made and the giving of a redelivery bond approved by the court, the court ordered the automobile released from the attachment and in accordance with the statute ordered and directed the sheriff to deliver the automobile to the defendants. By the original and official return filed by the sheriff and by the undisputed evidence, it is shown that such redelivery was not made. Among the contentions of the defendants, the chief contention is that, because such redelivery was not made, the redelivery bond or undertaking did not become operative, and hence the sureties were not liable thereon. By the great weight of authority, under a statute such as we have requiring a redelivery of attached property to the defendant upon the giving of an undertaking approved by the court and on a release of the attachment, and as was here ordered by the court, I think the contention is sound and should prevail. In 6 C. J. 339 the author says:

"Where the defendant in attachment executes and delivers to the attaching officer a bond in conformity to the statute for the release of the property or the discharge of the attachment, he becomes entitled to the possession of the attached property, and it becomes the duty of the attaching officer to deliver such property to him."

In 4 Cyc. 689 it is said that:

"When a bond in conformity with the statute is executed by a defendant it is the duty of the officer levying the attachment to deliver to the former the property so levied upon, and it is held that the bond is inoperative and that no liability attaches to the sureties unless the property is redelivered into the hands of the defendant or his agent."

The proposition is well put by the court in the case of *Drovers' Live Stock Commission Co.* v. *Custer County State Bank et al.,* 19 Okl. 302, 91 P. 850, 851:

"We are clearly of the opinion that the petition fails to state a cause of action. The purpose for executing a bond like the one in suit is to secure the return of the property attached, and there is no allegation in the petition to the effect that after the Custer County State Bank executed the bond in question the attached property was returned to it. Such an allegation was indispensable, and the fact that the court, after the bond was approved, ordered the attached property to be released, and the plaintiff attached a copy of such order to his petition, is not sufficient. The burden is on the pleader to show that the attached property actually was returned."

In the case of *McGonigle* v. *Gordon,* 11 Kan. 167, it was held that:

"In an action an undertaking given by the defendant in an attachment case, to secure the release of the attached property, it is necessary to aver and show by the evidence that the attached property was restored to the defendant, or there can be no recovery on the undertaking."

To that effect also are the cases of *Eddy* v. *Moore,* 23 Kan. 113; *Kohn & Co.* v. *Hinshaw,* 17 Or. 308, 20 P. 629; and *Cortelyou* v. *Maben,* 40 Neb. 512, 59 N. W. 94. In some jurisdictions it has been held that the mere release of the attached property suffices. But the requirement of our statute is that the attached property when released on the giving of a redelivery bond "must be delivered to the defendant." Such a requirement to render the undertaking operative is mandatory. To hold otherwise renders the giving of a redelivery bond or undertaking futile.

I thus am of the opinion that the judgment of the court

below should be reversed, and the case remanded for a new trial.

EPHRAIM HANSON, Justice.

I concur in the views expressed by Mr. Chief Justice STRAUP in his dissenting opinion.